# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40028**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Tarif R. WILLIAMS**
Captain (O-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 5 April 2022

———————————

*Military Judge:* Christopher D. James.

*Sentence:* Sentence adjudged 27 October 2020 by GCM convened at Keesler Air Force Base, Mississippi. Sentence entered by military judge on 13 November 2020: Dismissal and confinement for 13 months.

*For Appellant:* Major Matthew L. Blyth, USAF.

*For Appellee:* Lieutenant Colonel Amanda L.K. Linares, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Mary Ellen Payne, Esquire.

Before KEY, ANNEXSTAD, and MEGINLEY, *Appellate Military Judges*.

Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge KEY and Judge MEGINLEY joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

ANNEXSTAD, Judge:

A general court-martial composed of a military judge convicted Appellant, in accordance with his pleas and pursuant to a plea agreement (PA), of one specification each of conspiracy to distribute marijuana, wrongful introduction

of marijuana onto a military installation, and wrongful use of marijuana on divers occasions in violation of Articles 81 and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 912a.[1,2]

The PA provided that the military judge must enter a sentence consisting of a dismissal. It also provided for a confinement range of between 0 and 24 months for each of the conspiracy and wrongful introduction offenses, and a confinement range of between 0 and 6 months for the wrongful use offense. Lastly, the PA also provided that any periods of confinement were to be served concurrently. There were no other limitations on the sentence that could be imposed. After accepting Appellant's pleas of guilty, the military judge sentenced Appellant to a dismissal and 13 months of confinement.[3] Appellant subsequently requested the convening authority both defer and waive the automatic forfeitures in his case for the benefit of his son. On 10 November 2020, the convening authority signed a Decision on Action memorandum indicating she was taking no action on the findings and sentence and denying Appellant's request for deferment and waiver of the automatic forfeitures "due to the egregious nature of the charges" of which Appellant was convicted.

On appeal, Appellant raises two issues: (1) whether Appellant's sentence is inappropriately severe; and (2) whether the convening authority abused her discretion by denying Appellant's request to defer forfeitures.[4] With respect to issue (2), we have carefully considered Appellant's contention and find it does not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). With respect to the remaining issue, we find no error materially prejudicial to a substantial right of Appellant and affirm the findings and sentence.

---

[1] All references to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Pursuant to the plea agreement, the convening authority withdrew and dismissed (with prejudice upon completion of appellate review) one specification of attempted possession of marijuana with the intent to distribute in violation Article 80, UCMJ, 10 U.S.C. § 880.

[3] The military judge sentenced Appellant to 13 months' confinement for the conspiracy specification, 13 months' confinement for the wrongful introduction specification, and 3 months' confinement for the wrongful use specification, running concurrently. At the time of his sentence announcement, the military judge also recommended the convening authority waive the automatic forfeitures for the benefit of Appellant's son.

[4] Both issues were personally raised by Appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982).

## I. BACKGROUND

Appellant joined the United States Air Force on 23 June 2012 and continuously served as a cyberspace operations officer. In November 2018, he volunteered for a one-year deployment to Al Udeid Air Base (AUAB) in Qatar. Shortly, after his arrival in Qatar, he met and entered into a romantic relationship with JS, a defense contractor, who worked on base. Between February and July 2019, Appellant smoked marijuana with JS on two occasions at her off-base apartment in Qatar. Through JS, Appellant met "Kev," also known as "Trav," and another individual, EJ, also known as "E." During group discussions that followed, Appellant agreed to deliver marijuana to Kev and EJ in exchange for money. Specifically, the group devised a plan to ship marijuana to Appellant at AUAB, using a fake name to hide Appellant's participation but including the actual mailing address for the Combined Air Operations Center (CAOC) on AUAB. Appellant would pick up the marijuana at the CAOC and deliver it to Kev off base in Qatar. Kev and EJ then planned to distribute the marijuana to others in Qatar.

Between July and August 2019, Appellant received two packages at the CAOC, one containing marijuana and the other containing electronic cigarettes which are contraband in Qatar. In accordance with their plan, Appellant picked up the packages from the CAOC and delivered or attempted to deliver them to Kev. Appellant received approximately $1,366.00 for the first delivery. About a month later, military personnel picking up parcels at Doha International Airport in Qatar for delivery to AUAB detected the scent of marijuana in a bag of packages. When the mail truck arrived on AUAB, the mail clerks removed the suspected bag first and brought it to their supervisor's office. A short while later, security forces investigators responded to the mail facility with a drug detection dog. After the dog detected the smell of marijuana, investigators opened the package and discovered that it contained over two pounds of marijuana. The investigators then created a decoy package, with a tracking device, which Appellant later picked up at the CAOC and took to his on-base dorm room. Shortly thereafter, investigators arrived at Appellant's room where they found and seized the decoy package with Appellant's consent.

Following a rights advisement, Appellant admitted to his role in the conspiracy to distribute marijuana and consented to a search of his cell phone. Investigators found text and WhatsApp[5] messages between Appellant, JS, Kev, and EJ regarding the group's illegal plans. Within 24 hours, Appellant was returned to duty at Keesler Air Force Base (AFB), Mississippi. Appellant con-

---

[5] WhatsApp is a social media messaging application.

sented to a urinalysis after arriving at Keeler AFB, and his urine tested positive for tetrahydrocannabinol, the principal psychoactive ingredient in marijuana.

## II. DISCUSSION

Appellant contends that his sentence is inappropriately severe given the nature of his convicted offenses. Specifically, Appellant contends that the military judge failed to consider Appellant's "strong" rehabilitation potential. Appellant also argues that the convening authority's denial of his request to waive the automatic forfeitures for the benefit of his son makes his sentence inappropriately severe. We disagree with Appellant's contentions and find no relief warranted.

### A. Additional Background

During sentencing, the military judge considered Appellant's convicted misconduct and evidence presented by the Government, including testimony from Appellant's deployed commander, Lieutenant Colonel (Lt Col) MP. Lt Col MP testified about the specific mission impacts caused by Appellant's actions. In particular, Lt Col MP highlighted the gap in manning caused by Appellant's redeployment and the one- to two-month delay for another military member to fill Appellant's billet. Furthermore, he explained that certain unit initiatives were also not completed due to the personnel shortage caused by Appellant not completing the deployment. The Government also presented Appellant's prior performance reports which were above average and unblemished.

The military judge also considered evidence presented by Appellant. This included witness testimony from two field grade officers who opined that Appellant was a good worker, supportive father, and that he had positive rehabilitation potential. Appellant presented numerous positive character letters. Additionally, Appellant provided an unsworn statement in which he took responsibility for his actions, expressed remorse, and said he recognized that his actions warranted a dismissal.

### B. Law

"We review sentence appropriateness de novo." *United States v. Datavs*, 70 M.J. 595, 604 (A.F. Ct. Crim. App. 2011) (citing *United States v. Baier*, 60 M.J. 382, 383–84 (C.A.A.F. 2005)), *aff'd*, 71 M.J. 420 (C.A.A.F. 2012). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). While we have great discretion in determining whether a sentence is appropriate, we are not

authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

## C. Analysis

We have conducted a thorough review of Appellant's entire court-martial record, including his unsworn statement, officer performance reports, the testimony of the Defense's sentencing witnesses, and all materials submitted by Appellant during sentencing and clemency. We conclude that the nature and seriousness of the offenses clearly support the approved sentence. Here, Appellant not only wrongfully used marijuana on two occasions while deployed, but also was a key player in an international drug trafficking scheme. He caused illegal drugs to be trafficked into a foreign country hosting United States military personnel and had those drugs shipped to a secure military operations facility. He then delivered the contraband to two individuals who planned to distribute the drugs. Additionally, his actions had direct negative impacts on his unit's mission effectiveness.

Finally, we note that the adjudged sentence was just over half of what Appellant bargained for with the convening authority, and that Appellant has not cited any legal authority to support his contention that his sentence is inappropriately severe. Appellant's argument relies on matters previously considered by both the military judge during sentencing, and the convening authority during clemency. "While these matters are appropriate considerations in clemency, they do not show that the [A]ppellant's sentence is inappropriately severe." *United States v. Aguilar*, 70 M.J. 563, 567 (A.F. Ct. Crim. App. 2011). We find Appellant's recitation of these prior arguments devoid of any rationale for inappropriateness as a matter of law, and another attempt at clemency, which is not an authorized function of this court. *See Nerad*, 69 M.J. at 146. Understanding we have a statutory responsibility to affirm only so much of the sentence that is correct and should be approved, Article 66(d), UCMJ, 10 U.S.C. § 866(d), we conclude that the sentence is not inappropriately severe and we affirm the sentence.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court