# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**No. ACM 40072**

_____

**UNITED STATES**
*Appellee*

**v.**

**Joshua P. MOCK**
Captain (O-3), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 1 September 2022

_____

*Military Judge*: Thomas J. Alford (pretrial motion);[1] Brett A. Landry (pretrial); Jill M. Thomas.

*Sentence:* Sentence adjudged 1 March 2021 by GCM convened at Holloman Air Force Base, New Mexico. Sentence entered by military judge on 24 March 2021: dismissal and confinement for six months.

*For Appellant:* Major Matthew L. Blyth, USAF.

*For Appellee*: Major Cortland T. Bobczynski, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before KEY, ANNEXSTAD and MEGINLEY, *Appellate Military Judges*.

Judge MEGINLEY delivered the opinion of the court, in which Senior Judge KEY and Judge ANNEXSTAD joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

[1] Pursuant to Article 30a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 830a.

MEGINLEY, Judge:

A general court-martial comprised of a military judge convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of one specification of conduct unbecoming an officer and a gentleman for knowingly possessing visual depictions of minors engaging in sexually explicit conduct, in violation of Article 133, UCMJ, 10 U.S.C. § 933, and one specification of wrongful possession of child pornography, in violation of Article 134, UCMJ, 10 U.S.C. § 934.[2,3] The court-martial sentenced Appellant to a dismissal and confinement for six months. The convening authority took no action on the findings and approved the sentence,[4] and, with the exception of the findings entered for the Specification of Charge I, the military judge entered the findings and sentence as adjudged.

Appellant personally raises two issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982): (1) whether his sentence to a dismissal is inappropriately severe, and (2) whether the convening authority abused his discretion in denying Appellant's request to defer forfeitures.[5] We have carefully considered the second issue and find it does not warrant discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). Additionally, we consider another issue raised by Appellant:[6] (3) the entry of judgment

---

[2] Appellant's conviction for wrongful possession of child pornography under Article 134, UCMJ, 10 U.S.C. § 934, occurred before and after 1 January 2019. As such, the punitive article found in the *Manual for Courts-Martial*, *United States* (2016 ed.) (2016 *MCM*) will apply to this charge and specification. Appellant's conviction for conduct unbecoming an officer and gentleman under Article 133, UCMJ, 10 U.S.C. § 933, occurred after 1 January 2019. Therefore, the punitive article in the *Manual for Courts-Martial*, *United States* (2019 ed.) (2019 *MCM*) will apply to that charge and specification. All charges and specifications were referred to trial by court-martial after 1 January 2019; therefore, all other references to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the 2019 *MCM*.

[3] In accordance with the plea agreement and upon acceptance of Appellant's guilty plea, the convening authority withdrew and dismissed with prejudice a specification of wrongful viewing of child pornography and a specification of wrongful receipt of child pornography, both in violation of Article 134, UCMJ.

[4] The convening authority took "no action" on findings, but in applying "the version of Article 60, UCMJ, in effect on the date of the earliest offense of which the accused was found guilty," 10 U.S.C. § 860 (2016 *MCM*), the convening authority "[took] the following action on the sentence in this case: the sentence is approved."

[5] Upon Appellant's request, the convening authority waived all automatic forfeitures for the benefit of Appellant's wife and children.

[6] Appellant raised this third issue, also pursuant to *Grostefon*, in a footnote within his brief filed with this court.

(EoJ) contains an error as to the timeframe in the Specification of Charge I and therefore this court should remand Appellant's case for a corrected EoJ. We agree that the EoJ contains error because it does not accurately state the adjudged findings for this conviction; however, in the exercise of our authority under Rule for Courts-Martial (R.C.M.) 1111(c)(2), we correct the error in our decree. Following this court's Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1), mandate to affirm only so much of the findings and the sentence as the court finds, on the basis of the entire record, should be approved, we correct the error in the decree and affirm the findings and sentence.

## I. BACKGROUND

Appellant entered active duty service in February 2014 and was stationed at Holloman Air Force Base, New Mexico. At the time of his charged offenses, Appellant served as a Remotely Piloted Aircraft (RPA) pilot. As part of his plea agreement, Appellant agreed to a stipulation of fact. The information provided in the stipulation of fact and in Appellant's providence inquiry form the basis for the following factual background.

On 25 May 2019, Yahoo! Inc., an electronic communications services provider, flagged an account with an email address used by Appellant, for uploading 240 files of suspected child pornography. Yahoo! Inc. submitted a "CyberTip" to the National Center for Missing and Exploited Children (NCMEC), who in turn, notified the Air Force Office of Special Investigations (AFOSI).

Once AFOSI confirmed the account belonged to Appellant, agents coordinated with local detectives to obtain a search warrant for Appellant's off-base residence on 14 August 2019. Multiple electronic devices were seized during the search. On that same day, Appellant was interviewed by AFOSI agents, where he acknowledged that he had "seen some illegal stuff" and that "a lot of them are younger girls." When confronted by agents about the images, Appellant stated, "some of them that I saw that I knew were illegal, I don't want anything to do with that, right? Some of them morally questionable, absolutely, right?" When asked to explain what he meant by morally questionable, Appellant responded, "It was wrong. A lot of them were – a lot of them were young girls." Appellant stipulated "that some of the people in the images might be 10 or 12, but it was possible that others were younger."

Appellant possessed a total of 55 images of child pornography—25 child pornography images were found in his Yahoo! email account and 30 child pornography images were found on an external hard drive.[7] Appellant also possessed 11 "anime" images of what appeared to be minors engaging in sexually explicit conduct, which formed the basis for Appellant's conviction for conduct unbecoming an officer and a gentleman. With respect to the anime images, during his providence inquiry, Appellant told the military judge,

> [T]he images that support this Charge and Specification are clear depictions of minors. They -- some of them depict violence, sexual violence. Some of them are just extremely, extremely graphic. They're not simply hand-drawn cartoons. They're meant to be realistic in appearance. I -- there is no question in my mind that these are -- these are something that I'm personally ashamed of, and there is no question that I -- that anybody looking at them would be disturbed or should be disturbed.

NCMEC reported that 51 images possessed by Appellant were connected to known victims of child pornography. Appellant stipulated 28 of those images were considered child pornography.

Pursuant to his plea agreement, Appellant agreed to a maximum confinement of 24 months for the wrongful possession of child pornography specification, and a maximum confinement of 90 days for the conduct unbecoming specification. All terms of confinement were to be served concurrently. However, as Appellant notes, the plea agreement did not contain the common language, "This plea agreement places no further limitations on the sentence the military judge may adjudge," or words to that effect. Nonetheless, Appellant acknowledges that the military judge's plea agreement inquiry "made clear that her [ ] sentence fell within all parties' understanding of the agreement." In other words—aside from confinement—the plea agreement did not limit any form of authorized punishment that the military judge was empowered to adjudge, to include a dismissal.

---

[7] The child pornography found in Appellant's email account spanned a timeframe from 8 January 2019 to 19 May 2019. Appellant notes, and the court agrees, that several of the 55 images are duplicates of each other. However, in his brief, Appellant specifically stated that he "does not claim these duplications undermine the providence of his pleas in any way." We concur. The court also notes there were four sets of duplicates within the 51 files identified.

## II. DISCUSSION

### A. Sentence Appropriateness

#### 1. Additional Background

Appellant argues his dismissal is "inappropriately severe in light of: (1) his tremendous contributions to the Air Force; (2) the role of his combat experience in precipitating the offenses; and (3) his demonstrated rehabilitative potential."

As part of his pre-sentencing matters, Appellant presented 9 character letters, 11 certificates, 7 awards and citations, 4 letters of appreciation, and 5 miscellaneous documents and photographs; 6 witnesses also testified on his behalf. Finally, Appellant presented the military judge an oral unsworn statement and a lengthy written unsworn statement.

In his written unsworn statement, Appellant described his duties as an RPA pilot and provided several instances where his duties and the act of taking lives had a "profound impact" on him. Appellant notes in his brief that, "[i]n response to personal stressors, in and out of the military, he found himself engaging in the unhealthy outlet of building a library of pornography, which included child pornography." After Appellant's crimes were discovered, Appellant sought mental health services and religious guidance.

Appellant argues his dismissal will end "his ability to receive any type of treatment for what he endured in the Air Force" and that "to the degree he is broken, the Air Force is a large contributor." Finally, Appellant states, "The dismissal abandons him in his time of need and bars him from crucial services available for those who struggle with the mental scars of combat."

#### 2. Law and Analysis

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). Our authority to determine sentence appropriateness, "which reflects the unique history and attributes of the military justice system, includes but is not limited to considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). Alt-

hough we have great discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

The court acknowledges that prior to the discovery of Appellant's crimes, it appears as though Appellant had an above-average career. We also recognize the stressors and pressure that come with his duties as an RPA pilot. However, we also consider the extent to which Appellant's child pornography possession or his behavior fell below the standard expected of Air Force officers. As the Government stated in its brief, and we fully agree, "the demands of being an RPA pilot are hardly an excuse for participating in the exploitation of children." Some of the images depict the sexual assault of children, and are exceptionally graphic and disturbing, an admission made by Appellant himself with respect to the anime. Turning to the images of actual persons, by storing these files with an online service provider, Appellant made these files available—at the very least—to that service provider, thereby creating a risk that the images could be further distributed. Such proliferation could only serve to exacerbate the exploitation of any minor, or otherwise non-consenting individual, featured in those files.

Additionally, Appellant cited no legal precedent or authority to support his contention that his sentence to a dismissal is inappropriately severe. Appellant's argument and analysis on appeal is similar to his unsworn statements and the matters he provided during sentencing and clemency. To the extent Appellant's recitation of these prior arguments amounts to another attempt at clemency, such matters are outside the authorized function of this court. *See Nerad*, 69 M.J. at 146. Furthermore, Appellant faced up to 20 years in confinement, had a plea agreement cap of confinement for 2 years, and yet only received 6 months' confinement for his crimes. As such, we are confident the military judge gave Appellant's mitigation and extenuation matters the due consideration they warranted. And "[w]hile these matters are appropriate considerations during clemency, they do not show [Appellant]'s sentence is inappropriately severe." *United States v. Aguilar*, 70 M.J. 563, 567 (A.F. Ct. Crim. App. 2011). Having considered Appellant, the nature and seriousness of his convicted offenses, and all matters contained in the record of trial, to include all matters Appellant submitted in his case in extenuation, mitigation, and clemency, we conclude the approved sentence, including a dismissal, is not inappropriately severe.

## B. Entry of Judgment

Appellant notes, and we concur, that the EoJ states an incorrect timeframe for the Specification of Charge I (conduct unbecoming an officer and gentleman for knowingly possessing visual depictions of minors engaging in sexually explicit conduct). As referred, the specification states Appellant committed this

offense "between on or about 8 January 2019 and on or about 19 May 2019." Appellant pleaded and was found guilty of the specification as charged. The Statement of Trial Results—attached to the EoJ—reflects the timeframe as charged. However, the EoJ states Appellant's conduct occurred during the timeframe "between on or about 19 May 2019," which is incomplete and thus incorrect.

An accurate summary of the offense would reflect a timeframe of "between on or about 8 January 2019 and on or about 19 May 2019" in accordance with the findings of guilty announced to the Specification of Charge I. Appellant asks us to remand his case to correct this error. Rather than grant the relief requested by Appellant, we employ our authority under R.C.M. 1111(c)(2) and modify the EoJ.

### III. CONCLUSION

The findings and sentence as entered by the military judge and modified by this opinion are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). The entry of judgment for the finding of guilty to Charge I and its Specification is modified by excepting "on or about 19 May 2019," and substituting therefor, "on or about 8 January 2019 and on or about 19 May 2019." Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court